IN THE UNITED STATED DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLIED WORLD SURPLUS LINES INSURANCE COMPANY, | : <br> : <br> : |
| *Plaintiff*, | :    _____ |
| *vs*. | : <br> : |
| CLIMAX TECHNOLOGY CO., LTD., a Foreign Corporation, | : <br> : <br> : |
| *Defendant*. | : |

**COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES**

Plaintiff, Allied World Surplus Lines Insurance Company ("Allied World"), by and through its attorneys, Clyde & Co US LLP, brings the following Complaint for Declaratory Judgment and Damages against Defendant, Climax Technology Co., Ltd. ("Climax"), and in support thereof, alleges as follows:

**NATURE OF THE ACTION**

1. Allied World is providing a defense to its insured, Medical Guardian, LLC ("Medical Guardian"), in a lawsuit entitled *Danielle Wielgopolski, as Executor of the Estate of George Henry Hargraves v. Medical Guardian, LLC, et al*., Case No. 230702184, pending in the Court of Common Pleas, Philadelphia County ("Underlying Action"). Allied World has already expended—and will continue to expend—sums to defend Medical Guardian.

2. However, Climax is contractually obligated to defend and indemnify Medical Guardian in the Underlying Action on a primary and noncontributory basis pursuant to the Manufacturing Supply Agreement entered into on or around November 11, 2020 by Climax Technology Co., Ltd. and Medical Guardian (the "Agreement"). Despite repeated requests by Medical Guardian and Allied World, Climax has unjustifiably refused to defend and indemnify

1

Medical Guardian. This has left Allied World, as Medical Guardian's liability insurer, with no choice but to defend Medical Guardian and pay the fees and costs associated with that defense.

3. Allied World therefore brings this action: (i) to secure a declaration that Climax has a duty to defend Medical Guardian in the Underlying Action; (ii) to recoup from Climax the sums it has and will spend to defend Medical Guardian in the Underlying Action due to Climax's wrongful refusal to defend Medical Guardian; and (iii) recover any other relief to which it is entitled, including its attorneys' fees and costs incurred to bring this action.

## JURISDICTION AND VENUE

4. Jurisdiction is proper because the alleged amount of the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000. The basis for jurisdiction is diversity of citizenship pursuant to 28 U.S.C. § 1332(a).

5. Venue is proper in this district because the Underlying Action is being litigated in this district, and otherwise, "a substantial part of the events … giving rise to the claim occurred in this district." *See* 28 U.S.C. § 1391(b)(2). Here, the basis of this action is premised on Climax's breach of the Agreement, which was executed by Medical Guardian, a Pennsylvania limited liability company having its principal place of business at 1818 Market Street, Suite 1200, Philadelphia, Pennsylvania. The Agreement was executed by Medical Guardian at its offices within this district. This action is also based on Climax's failure to defend an Underlying Litigation in Philadelphia, Pennsylvania.

6. All conditions precedent occurred, have been performed, or were waived.

## THE PARTIES

7. Allied World is a corporation organized and existing under the laws of the State of Arkansas, with its principal place of business in the State of New York.

8. Defendant, Climax Technology Co., Ltd. is a Taiwanese Company that has identified its principal place of business as: Taipei Headquarters No. 258, Hsin Hu 2nd Road, Taipei 114, Taiwan.

9. Climax carries on continuous and systemic operations in Pennsylvania, as evidenced by the Manufacturing Supply Agreement entered into on November 11, 2020 by Climax and Medical Guardian, a Pennsylvania limited liability company with its principal place of business in Pennsylvania. Thus, Climax has sufficient contacts with the State of Pennsylvania such that exercising specific personal jurisdiction over Climax in this matter comports with the traditional notion of fair play and substantial justice.

10. This matter is brought pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. 2201, *et seq* and Fed. R. Civ. P. 57. There is a ripe and justiciable dispute between Allied World and Climax regarding which entity should be defending Medical Guardian in the Underlying Litigation. Allied World also seeks to recoup from Climax the sums it has been forced to spend defending Medical Guardian in the Underlying Litigation because of Climax's wrongful refusal to defend Medical Guardian.

## FACTUAL BACKGROUND

### *The Manufacturing Supply Agreement*

11. On November 11, 2020, Medical Guardian and Climax entered into the Agreement. Climax agreed to manufacture and sell personal emergency response system ("PERS") equipment to Medical Guardian, who would then attempt to sell said equipment at retail to end consumers. (A true and correct copy of the Agreement is attached as Exhibit "1.")

12. The Agreement provides that the "Seller (as "Indemnifying Party")," Climax, has a broad duty to defend and indemnify the "Buyer Parties", here, Medical Guardian, on a primary and non-contributory basis:

> 10.1 <u>Indemnification</u>. Subject to the terms and conditions of this Agreement, Seller (as "**Indemnifying Party**") shall indemnify, defend and hold harmless the Buyer Parties and their respective Representatives, Affiliates, successors and permitted assigns (collectively, "**Indemnified Parties**") against any and all losses, damages, liabilities, deficiencies, claims, actions, judgments, settlements, interest, awards, penalties, fines, costs, or expenses of whatever kind, including reasonable attorneys' fees, fees and the costs of enforcing any right to indemnification under this Agreement and the cost of pursuing any insurance providers, incurred by any Indemnified Party (collectively, "**Losses**"), relating to/arising out or resulting from any third-party Claim or any direct Claim against Indemnifying Party alleging:
>
> […]
>
> (c) any Claim seeking damages for product liability arising out of, in connection with or as a result of the Devices to the extent that such Claim is attributable to the acts or omissions of the Indemnifying Party or defects in the Devices;
>
> (d) any bodily injury, death of any Person or damage to real or tangible personal property caused by an Indemnifying Party's negligence or other wrongful conduct….
>
> […]
>
> 15.2 <u>Certificate of Insurance.</u> Seller shall cause the Required Insurance to name Buyer as an additional insured. The Required Insurance shall be primary for all purposes (with the insurance of Buyer excess and non-contributory for all purposes, including defense, payment or contribution)…

(*See* Ex. 1, at § 10.1 & 15.2).

### *The Underlying Action*

13. On July 21, 2023, Danielle Wielgopolski, as Executor of the Estate of George Henry Hargraves (the "Decedent") filed a Complaint in the Underlying Action against "Medical Guardian, LLC" and "Medical Guardian" asserting the following causes of action: strict product liability; negligence, recklessness, gross negligence, and willful and wanton conduct; breach of

warranty; violation of the Unfair Trade Practices and Consumer Protection Law 73 P.S. §201-1, *et seq.*; wrongful death; and a survival action. (A true and correct copy of the Complaint is attached as Exhibit "2.")

14. On March 4, 2024, Danielle Wielgopolski, as Executor of the Decedent's Estate filed an Amended Complaint in the Underlying Action adding the following entities as Defendants, in addition to Medical Guardian, LLC and Medical Guardian: Affiliated Monitoring, LLC; Affiliated Central, Inc.; and Climax Technology Co., Ltd. The Amended Complaint asserted the same causes of action as set forth in the Complaint. (A true and correct copy of the First Amended Complaint is attached as Exhibit "3.")

15. It is alleged in the Underlying Action that the Decedent died from complications from injuries he sustained on March 26, 2022 after he fell and/or suffered from a medical condition at his residence and was unable to get up. (*See* Ex. 3, at ¶ 20-21).

16. Further, it is alleged that, at the time of the fall, the Decedent was wearing a Medical Guardian Fall Detection Necklace around his neck, which is part of a PERS designed, manufactured, distributed, advertised, marketed, supplied, leased, rented and/or sold by Medical Guardian pursuant to the Agreement. (*See* Ex. 3, at ¶ 22). The Medical Guardian Fall Detection Necklace that the Decedent was wearing included a "help" button that can be pressed to immediately connect the wearer with safety response and/or emergency response personnel. (*See* Ex. 3, at ¶ 25).

17. The Amended Complaint in the Underlying Action alleges that the Decedent was found by his granddaughter on March 26, 2022, lying on the floor of his residence with bluish and purple skin, especially in the face. (*See* Ex. 3, at ¶ 28).

18. Further, it is alleged that, following the Decedent's fall and/or medical emergency, the PERS equipment "which was provided by Medical Guardian, designed and manufactured by Climax, and which was supposed to be monitored by Affiliated, did not automatically sense and detect Mr. Hargraves' fall or summon emergency medical care on his behalf, and no responders or medical or other assistance responded or came to his aid, due to either the defective, malfunctioning, and unreasonably dangerous PERS equipment, and/or the failure of the PERS monitoring services to heed the medical alert and to communicate with Mr. Hargraves and to summon help and assistance on his behalf." (*See* Ex. 3, at ¶ 31).

19. It is alleged that the PERS equipment, the failure of which contributed to the Decedent's death, was designed and manufactured by Climax. (*See* Ex. 3, at ¶ 31).

20. Further, it is alleged that, "Medical Guardian utilizes agents, contractors, or subcontractors, such as Climax, to design and manufacture PERS equipment to be issued to subscribers." (*See* Ex. 3, at ¶ 35).

21. The Complaint in the Underlying Action alleges that, as a result of the PERS system and equipment's failure to work and function properly to summon emergency medical care, Decedent died due to acute cardiopulmonary arrest, acute respiratory failure, acute congestive heart failure and atherosclerotic cardiovascular disease. (*See* Ex. 3, at ¶ 42, 49).

22. Climax did, in fact, manufacture the PERS system and equipment that the Decedent was wearing at the time of his fall.

### *Climax's Repeated and Unjustified Refusal to Defend Medical Guardian*

23. On November 3, 2023, counsel for Medical Guardian tendered the defense and indemnity of Medical Guard in the Underlying Action to Climax pursuant to the terms of the

Agreement. (A true and correct copy of the November 3, 2023 tender letter is attached hereto as Exhibit "4.")

24. On January 31, 2024, counsel for Climax wrote to Medical Guard's counsel advising that Climax will defend Medical Guard in the Underlying Action under a reservation of rights. (A true and correct copy of this January 31, 2024, correspondence is attached as Exhibit "5.")

25. On February 22, 2024, counsel for Climax wrote to Medical Guard's counsel advising that Climax was withdrawing its tender acceptance based on the belief at the time that the subject device had been destroyed by Medical Guardian. (A true and correct copy of this February 22, 2024, correspondence is attached as Exhibit "6.")

26. On March 7, 2024, Medical Guardian's counsel wrote to Climax's counsel to retender Medical Guardian's defense. (A true and correct copy of the March 7, 2024, tender letter is attached hereto as Exhibit "7.")

27. On April 1, 2024, Climax's counsel advised Medical Guardian's counsel that its position had not changed. (A true and correct copy of this April 1, 2024, correspondence is attached as Exhibit "8.")

28. Thereafter, Medical Guardian confirmed that the subject device had been preserved and was not destroyed as alleged in Climax's withdrawal of its tender acceptance. Climax was made aware that the subject device was discovered. The subject device was made available for inspection by Climax's counsel.

29. On September 13, 2024, Allied World retendered Medical Guardian's defense in the Underlying Action to Climax given that the subject device had been discovered. (A true and correct copy of this September 13, 2024, tender letter is attached as Exhibit "9.")

7

30. On September 23, 2024, Climax rejected Medical Guardian's retender, taking the position that the subject device was not covered by the Agreement. (A true and correct copy of this September 23, 2024, correspondence is attached as Exhibit "10.")

31. On May 16, 2024, Medical Guardian's counsel wrote to Climax's counsel to retender Medical Guardian's defense. (A true and correct copy of the May 16, 2024, tender letter is attached hereto as Exhibit "11.")

32. On December 20, 2024, Medical Guardian retendered its defense to Climax for the third time based on the allegations in the Underlying Action and the terms of the Agreement.

33. To date, Climax has refused to acknowledge its contractual obligations to defend and indemnify Medical Guard in the Underlying Action.

### *Allied World's Defense of Medical Guardian*

34. Allied World issued general liability insurance to Medical Guardian effective December 19, 2021 to December 19, 2022—the period during which the Decedent fell and died.

35. Due to Climax's unjustified refusal to defend Medical Guardian, Allied World, as Medical Guardian's liability insurer, was left with no choice but to defend Medical Guardian in the Underlying Lawsuit to ensure Medical Guardian's interests were protected.

36. Allied World has paid—and continues to pay—attorneys' fees and other costs to defend Medical Guardian in the Underlying Lawsuit.

## COUNT I – DECLARATORY JUDGMENT

*Climax Has a Duty to Defend Medical Guardian in the Underlying Lawsuit.*

37. Allied World incorporates the allegations in paragraphs 1 through 35 as if fully set forth herein.

38. The Agreement requires Climax to defend and indemnify Medical Guardian against "*any* Claim seeking damages for product liability arising out of, in connection with or as a result of the Devices to the extent that such Claim is attributable to the acts or omissions of the Indemnifying Party or defects in the Devices."

39. The Underlying Lawsuit is a Claim that seeks damages for product liability arising out of an alleged defect in a Device as defined by the Agreement.

40. Climax therefore has a duty to defend Medical Guardian in the Underlying Lawsuit but has breached that duty by repeatedly refusing to defend Medical Guardian, to Allied World's detriment.

41. Accordingly, Allied World is entitled to a declaration that Climax has a duty to defend Medical Guardian in the Underlying Action on a primary and non-contributory basis.

## COUNT II – EQUITABLE SUBROGATION

*Allied World is Entitled to Recover from Climax the Sums it has Expended to Defend Medical Guardian in the Underlying Lawsuit.*

42. Allied World incorporates the allegations in paragraphs 1 through 35 as if fully set forth herein.

43. Allied World has paid defense fees and costs on Medical Guardian's behalf to defend Medical Guardian in the Underlying Litigation and is therefore subrogated to Medical Guardian's rights to recover those fees and costs from any liable third party.

44. For the reasons set forth above, Climax has breached its obligation to Medical Guardian under the Agreement to defend Medical Guardian in the Underlying Litigation.

45. Allied World, as Medical Guardian's equitable subrogee, is therefore entitled to recover from Climax all fees and costs it has expended to defend Medical Guardian in the Underlying Litigation.

## **REQUESTED RELIEF**

WHEREFORE, Allied World respectfully requests that this Court award the following relief:

A. Enter a declaratory judgment in Allied World's favor and against Climax declaring that Climax has a contractual duty to defend Medical Guardian in the Underlying Action on a primary and non-contributory basis;

B. Enter a monetary judgment in Allied World's favor and against Climax for the fees and costs paid by Allied World to defend Medical Guardian in the Underlying Litigation;

C. Enter a monetary judgment in Allied World's favor awarding Allied World pre-judgment and post-judgment interest as allowed by law;

D. Award in favor of Allied World its attorneys' fees and costs incurred in bringing this action; and

E. Award Allied World any other relief to which it is entitled.

## **JURY DEMAND**

Allied World demands a trial by jury on all claims to the extent permitted by law.

Dated: February 18, 2025

Respectfully Submitted,

CLYDE & CO US LLP

By: */s/ Konrad R. Krebs*
Konrad R. Krebs (PA ID No. 319253)
CLYDE & CO US LLP
1515 Market Street, Suite 1200
Philadelphia, PA 19102
T: (973) 210-6705
Konrad.Krebs@clydeco.us

James J. Sanders (*pro hac vice* to follow)
Michael H. Passman (*pro hac vice* to follow)
CLYDE & CO US LLP
30 S. Wacker Dr., Suite 2600
Chicago, IL 60606
T: (312) 635-7000
James.Sanders@clydeco.us
Michael.Passman@clydeco.us

*Attorneys for Plaintiff, Allied World Surplus Lines Insurance Company*