IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALLIED WORLD SURPLUS LINES INSURANCE COMPANY,** | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| v. | : | NO. 25-cv-00866 |
| | : | |
| **CLIMAX TECHNOLOGY CO., LTD.,** | : | |
| a Foreign Corporation, | : | |
| *Defendant.* | : | |

**MEMORANDUM**

**KENNEY, J.**                                                                                          **October 31, 2025**

Before the Court is Plaintiff Allied World Surplus Lines Insurance Co.'s ("Allied World") Motion for Partial Judgment on the Pleadings, ECF No. 31 (the "Motion"). Defendant Climax Technology Co., Ltd. ("Climax") filed a response in opposition, ECF No. 32. Allied World filed a reply, ECF No. 33, and Climax filed a sur-reply, ECF No. 34. Allied World seeks a declaratory judgment that Climax has a duty to defend Medical Guardian, LLC ("Medical Guardian") as a matter of law in a state action arising from the malfunctioning of a medical alert device manufactured by Climax and sold to Medical Guardian. For the reasons discussed below, the Motion is **GRANTED**.

**I.      BACKGROUND**

Plaintiff Allied World is an insurance company that is defending its insured, Medical Guardian, in a state action entitled *Danielle Wielgopolski, as Executor of the Estate of George Henry Hargraves v. Medical Guardian, LLC, et al.*, Case No. 230702184, pending in the Court of Common Pleas, Philadelphia County (the "Underlying Action"). ECF No. 1 ("Compl.") ¶ 1. The Underlying Action alleges that Mr. Hargraves was wearing a personal emergency response system ("PERS") device when he fell and/or suffered from a medical condition, resulting in injuries that

caused his death. *Id.* ¶¶ 15–16. The PERS device consisted of a "Fall Detection Necklace" that is designed to detect a user's fall and call for help automatically. *Id.* ¶¶ 16, 18. The device also includes a "help" button that, when pressed, is supposed to immediately connect the user with emergency services. *Id.* ¶ 16. After Mr. Hargraves fell, no emergency responders came to his aid and he was later found lying on the floor of his residence by his granddaughter. *Id.* ¶¶ 17–18. The executor of Mr. Hargraves' estate alleges in the Underlying Action that Mr. Hargraves died as a result of the PERS device's failure to detect Mr. Hargraves' fall and/or the failure of the PERS monitoring services to heed the medical alert from the device and summon emergency services on his behalf. *Id.* ¶¶ 18, 21.

The PERS device worn by Mr. Hargraves at the time of his fall was manufactured and designed by Climax and sold to Mr. Hargraves by Medical Guardian. *Id.* ¶ 18. Medical Guardian and Climax had a contractual arrangement whereby Climax manufactured PERS equipment to sell to Medical Guardian, which would then sell the equipment to consumers. *Id.* ¶ 11. This arrangement was governed by the Manufacturing Supply Agreement entered into on November 11, 2020 by Climax and Medical Guardian (the "Agreement"). *Id.* ¶ 2. The Agreement contains an indemnification clause, which provides that Climax has a duty to defend and indemnify Medical Guardian on a primary and non-contributory basis against certain claims involving PERS devices. *Id.* ¶ 12. These claims include (1) any claim seeking damages for product liability arising out of, in connection with, or as a result of the PERS devices to the extent that such claim is attributable to the acts or omissions of Climax or defects in the PERS devices; and (2) any claim alleging bodily injury, death of any person, or damage to real or tangible personal property caused by Climax's negligence or other wrongful conduct. *Id.*

Pursuant to the indemnification provision of the Agreement, Medical Guardian tendered its defense and indemnity in the Underlying Action to Climax. *Id.* ¶ 23. After initially accepting the tender under a reservation of rights, Climax later withdrew its acceptance and took the position that the PERS device worn by Mr. Hargraves was not covered by the Agreement. *Id.* ¶¶ 24–25, 30. As Medical Guardian's general liability insurer, Allied World stepped in to defend Medical Guardian in the Underlying Action. *Id.* ¶¶ 34–35. Allied World then brought the instant action against Climax, seeking a declaratory judgment that Climax has a duty to defend Medical Guardian in the Underlying Action and recovery of costs Allied World has expended to defend Medical Guardian in the Underlying Action. *Id.* ¶¶ 37–45. On August 22, 2025, Allied World filed the instant Motion, ECF No. 31, to which Climax responded on September 29, 2025, ECF No. 32. Allied World filed a reply on October 6, 2025, ECF No. 33, and Climax filed a sur-reply on October 9, 2025, ECF No. 34. Accordingly, the Motion is now fully briefed and ripe for consideration.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). Judgment on the pleadings may be granted only if the movant clearly establishes that there are no unresolved issues of material fact and that he is entitled to judgment as a matter of law. *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008). In reviewing a motion for judgment on the pleadings, the court must view the facts presented in the complaint and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005). In addition to considering the pleadings, the court may consider any exhibits attached to the pleadings, undisputedly authentic documents attached to the motion if

plaintiff's claims are based on the documents, and matters of public record. *Atiyeh v. Nat. Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010).

### III. DISCUSSION

Allied World seeks a declaratory judgment that Climax has a duty to defend Medical Guardian in the Underlying Action as a matter of law. ECF No. 31-1 at 2. Under Pennsylvania Law,[1] the duty to defend is triggered "if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope" of the indemnification provision. *Erie Ins. Exch. v. Moore*, 228 A.3d 258, 265 (Pa. 2020) (citation omitted). "The truth of the complaint's allegations is not at issue when determining whether there is a duty to defend; the allegations are to be taken as true and liberally construed in favor of the insured." *Id.* (cleaned up). One determines whether a claim is "potentially covered" by an indemnification provision by comparing the four corners of the contract containing the indemnification provision to the four corners of the complaint. *Id.*

Here, the "four corners" of the Amended Complaint[2] in the Underlying Action—when taken as true—state that the PERS device that failed to send an emergency signal during Mr. Hargraves' medical emergency was designed and manufactured by Climax and sold by Climax to Medical Guardian pursuant to a Manufacturing Supply Agreement. ECF No. 1-3 ¶¶ 22–24, 31.

---

[1] The basis for the Court's jurisdiction in this case is diversity of citizenship pursuant to 28 U.S.C. § 1332(a). "A federal court sitting in diversity must apply state substantive law." *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)).

[2] In its opposition to the Motion, Climax recites the chronology of the pleadings in the Underlying Action, noting that the executor of Mr. Hargraves' estate did not reference Climax or the Agreement in the first filed Complaint and only added claims against Climax in the Amended Complaint after Medical Guardian filed a Joinder Complaint seeking a defense from Climax. ECF No. 32 at 7. The contents of the executor's initial Complaint are irrelevant because the most recently filed Amended Complaint is the operative pleading in the Underlying Action. *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019).

The Underlying Action alleges that as a result of the PERS device's failure to function properly, no emergency responders were summoned to Mr. Hargraves' aid and consequently, Mr. Hargraves died from his injuries. *Id.* ¶¶ 31–32. The Amended Complaint brings claims against Medical Guardian and Climax for, *inter alia*, strict product liability, negligence, recklessness, gross negligence, and willful and wanton conduct. *Id.* ¶¶ 68–83.

The Agreement between Climax and Medical Guardian contains an indemnification provision that expressly requires Climax to defend and indemnify Medical Guardian against any claims alleging: (1) damages for product liability arising out of, in connection with, or as a result of the PERS devices sold by Climax to Medical Guardian to the extent that such claim is attributable to the acts or omissions of Climax or defects in the PERS devices; or (2) any bodily injury, death of any person, or damage to real or tangible personal property caused by Climax's negligence or other wrongful conduct. Compl. ¶ 12. The relevant portions of the Agreement's indemnification provision state as follows:

> 10.1 Indemnification. Subject to the terms and conditions of this Agreement, Seller (as "**Indemnifying Party**") shall indemnify, defend and hold harmless the Buyer Parties and their respective Representatives, Affiliates, successors and permitted assigns (collectively, "**Indemnified Parties**") against any and all losses, damages, liabilities, deficiencies, claims, actions, judgments, settlements, interest, awards, penalties, fines, costs, or expenses of whatever kind, including reasonable attorneys' fees, fees and the costs of enforcing any right to indemnification under this Agreement and the cost of pursuing any insurance providers, incurred by any Indemnified Party (collectively, "**Losses**"), relating to/arising out or resulting from any third-party Claim or any direct Claim against Indemnifying Party alleging:
> […]
> (c) any Claim seeking damages for product liability arising out of, in connection with or as a result of the Devices to the extent that such Claim is attributable to the acts or omissions of the Indemnifying Party or defects in the Devices;

5

> (d) any bodily injury, death of any Person or damage to real or tangible personal property caused by an Indemnifying Party's negligence or other wrongful conduct….

*Id.*; ECF No. 1-1 at 16–17.

Comparing the four corners of the Agreement to the four corners of the Amended Complaint in the Underlying Action, the Court finds that Climax's duty to defend Medical Guardian is triggered because the executor of Mr. Hargraves' estate has brought claims for product liability and negligence against Climax in relation to Mr. Hargraves' death. *See* ECF No. 1-3 ¶ 77 ("As a direct, factual, and proximate result of the defective and unreasonably dangerous conditions and/or malfunction of the PERS equipment, Defendants named herein are strictly liable for the injuries, damages, and death of Decedent …."); *id.* ¶ 81 ("Defendants Medical Guardian … and Climax … breached their duties of care, and caused Decedent's injuries, damages, and death, through their negligent, reckless, grossly negligence[sic], and/or willful and wanton acts and/or omissions[.]"). The claims in the executor's Amended Complaint are precisely those that are contemplated by sections 10.1(c) and (d) of the Agreement's indemnification provision—*i.e.*, claims seeking damages for product liability arising out of, in connection with, or as a result of the PERS equipment that is attributable to defects in the equipment, and claims alleging bodily injury or death caused by Climax's negligence or other wrongful conduct. *See* ECF No. 1-1 at 16–17.

In its opposition to the Motion, Climax argues that the Agreement does not apply to the dispute in the Underlying Action at all. ECF No. 32 at 2. Climax's sole argument for this contention is that the Amended Complaint in the Underlying Action does not specify that the PERS device worn by Mr. Hargraves is a "Device" as defined by the Agreement. *Id.* at 6–7. According to Climax, the Agreement defines "Devices" as "specific models of PERS equipment listed in the 'Schedule 1' of the Agreement …, with their particular technical components, features, and functionality laid out in the 'Specifications' section of the Agreement set forth in Schedule 3." *Id*

6

at 5. Because the Amended Complaint "does not reference these specific technicalities of the 'Devices,' let alone referencing the 'Devices' at all," Climax contends that the allegations of the Underlying Action therefore are outside the scope of the Agreement. *Id.* at 6–7.

Yet, the Amended Complaint does allege that the PERS device worn by Mr. Hargraves "was designed, manufactured, distributed, supplied and/or sold by Defendant Climax to Defendant Medical Guardian pursuant to a Manufacturing Supply Agreement." ECF No. 1-3 ¶ 24. It is not necessary for the Amended Complaint to specifically reference the technicalities of the "Devices" in order to sufficiently allege that the PERS device qualifies as a "Device" governed by the Agreement. By alleging that the PERS device was manufactured by Climax and sold to Medical Guardian pursuant to a Manufacturing Supply Agreement,[3] the Amended Complaint is plainly alleging that the PERS device falls within the scope of the Agreement. While Climax may disagree with the allegation that the PERS device qualifies as a "Device" governed by the Agreement, this disagreement does not impact its duty to defend because the duty to defend is based on the complaint's factual allegations without consideration of the truth of those allegations. *See Erie Ins. Exch.*, 228 A.3d at 265. Thus, pursuant to the Agreement, Climax has a duty to defend Medical Guardian in the Underlying Action "until such time as the claim is confined to recovery that the contract does not cover." *Cottman Ave. PRP Grp. v. AMEC Foster Wheeler Env't Infrastructure Inc.*, 439 F. Supp. 3d 407, 441 (E.D. Pa. 2020).

---

[3] In its sur-reply, Climax notes that the Amended Complaint in the Underlying Action merely alleges that the PERS device was sold pursuant to "a Manufacturing Supply Agreement" and not "the Agreement" as alleged by Allied World. ECF No. 34 at 5. Despite arguing over semantics and artfully disclaiming that the PERS device worn by Mr. Hargraves was a "Device" within the scope of the Agreement, Climax never states that it did not manufacture the PERS device. Climax never states that it did not sell the PERS device to Medical Guardian. And Climax does not identify any other agreement or contract pursuant to which it sold other devices and equipment to Medical Guardian that would encompass the PERS device in question.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff Allied World's Motion for Partial Judgment on the Pleadings (ECF No. 31). An appropriate Order will follow.

BY THE COURT:

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**